UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ROSEMARY GREENLAW,

    Plaintiff,

v.

R. ALEXANDER ACOSTA,

    Defendant.

Case No. 18-cv-04932-VKD

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 22

Plaintiff Rosemary Greenlaw filed this action against defendant R. Alexander Acosta, Secretary of the Department of Labor, asserting federal claims for discrimination on the basis of age and disability and retaliation for engaging protected conduct; state law claims for discrimination and retaliation; and a federal claim for violation of the Freedom of Information Act and the Privacy Act of 1974.[1] Dkt. No. 8. The Secretary moves to dismiss Ms. Greenlaw's federal age and disability discrimination claims, her state law claims, and her request for punitive damages. The Court conducted a hearing on this motion.

For the reasons discussed in this order, the Court grants the Secretary's motion to dismiss without leave to amend.

## I. BACKGROUND

Ms. Greenlaw began work as an Administrative Assistant for the Occupational Safety and Health Administration ("OSHA") on April 3, 2016, after completing more than 22 years of prior federal service. Dkt. No. 8, ¶¶ 12, 13. Ms. Greenlaw says that she is older than 40 and has a disability, although that disability is not identified in her first amended complaint. *Id.* ¶¶ 14, 18,

---

[1] Ms. Greenlaw is proceeding *pro se*.

30, 36.

In May of 2016, Ms. Greenlaw applied for the position of Investigator in the same OSHA office where she worked as an Administrative Assistant. *Id.* ¶ 14, Ex. B at 1. Although she was asked to interview for an Investigator position, ultimately she was not successful. *Id.* ¶ 14. Ms. Greenlaw says that two other candidates who were chosen as Investigators were younger than 40 and did not have disabilities. *Id.* ¶¶ 14, 38.

After her unsuccessful application to be an Investigator, Ms. Greenlaw says she was asked to perform the duties of a different position, Staff Assistant, but was not given the higher pay grade and compensation associated with that position. *Id.* ¶ 15. She made inquiries about her rights and remedies, and in late October 2016, she was asked to prepare a memorandum describing the discrepancies between her position description and the duties she was actually performing. *Id.* ¶¶ 15, 20. She completed the memorandum and was terminated shortly thereafter, effective October 31, 2016. *Id.* ¶ 20, Ex. C.

On November 15, 2016, Ms. Greenlaw filed an appeal with the Merit Systems Protection Board ("MSPB") citing three grounds. First, she asserted that she was not selected to be an Investigator due to discrimination on the basis of age and disability. Second, she asserted that she was required to perform the duties of a different position for which she was not compensated. Third, after she discussed the discrepancy between her job duties and compensation with her supervisor and other administrators, her existing employment was terminated in retaliation. Dkt. No. 22-1, Ex. 1.[2] The MSPB processed Ms. Greenlaw's MSPB appeal as two separate appeals: (1) MSPB Docket No. SF-0752-17-0090-I-1, addressing her termination and additional uncompensated duties claims, and (2) MSPB Docket No. SF-3443-17-0089-I-1, addressing her non-selection claim. Dkt. No. 22-1, Exs. 2, 3.

On December 19, 2016, while her appeal was pending before the MSPB, Ms. Greenlaw filed a formal complaint with the Department of Labor through that agency's Equal Employment

---

[2] The Secretary asks the Court to take judicial notice of Ms. Greenlaw's MSPB and EEO/EEOC records. Ms. Greenlaw does not object. For the reasons discussed below, the Court takes judicial notice of these records, not for the truth of the matters asserted therein, but solely for the dates and general nature of those proceedings, which are not disputed by the parties.

2

1     Opportunity ("EEO") process.  Dkt. No. 8, ¶ 16.

2           On December 21 and 22, 2016, the MSPB administrative judge issued initial decisions dismissing both of Ms. Greenlaw's MSPB appeals for lack of jurisdiction.  Dkt. No. 22-1, Exs. 5, 6.  Ms. Greenlaw petitioned for Board review of both decisions on February 1, 2017.  *Id.*, Ex. 7.  The parties advise the Court that those petitions for review remain pending.

           On April 18, 2017, the Department of Labor declined to accept Ms. Greenlaw's EEO complaint for investigation on the ground that she had previously elected to pursue the same matters in an appeal to the MSPB, and the MSPB proceedings were still pending.  Dkt. No. 22-1, Ex. 9.  Ms. Greenlaw subsequently asked for a hearing before an EEOC administrative judge.  Dkt. No. 8, ¶ 16.  On August 3, 2017, the EEOC administrative judge dismissed Ms. Greenlaw's complaint.  Dkt. No. 22-1, Ex. 11.  Ms. Greenlaw appealed the dismissal to the EEOC's Office of Federal Operations, which affirmed the administrative judge's dismissal on January 4, 2018.  Dkt. No. 8, Ex. B.  Ms. Greenlaw's request for reconsideration of that decision was denied on May 16, 2018.  *Id.*, Ex. A.

           Ms. Greenlaw filed the present action on August 14, 2018, and filed an amended complaint on September 4, 2018.  The amended complaint references Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634, the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*, and the Freedom of Information and Privacy Acts, 5 U.S.C. § 552, *et seq.*, and also makes passing reference to the "Americans with Disabilities Act,"  Dkt. No. 8 at ECF 6-7.  That pleading asserts federal claims for "Age Discrimination," "Disability Discrimination," "Retaliation," and "FOIA and Privacy Act/," as well as state law tort claims alleging that "[t]he conduct by Defendants constitutes an abuse of process, negligent and intentional infliction of emotional distress, conversion, [and] breach of the covenant of good faith and fair dealing."  *Id.* ¶ 52.  The Secretary moves to dismiss Ms. Greenlaw's federal age discrimination, disability discrimination, and retaliation claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  Dkt. No. 22 at 2.  The Secretary also moves to dismiss Ms. Greenlaw's state law claims and to strike her claim for punitive damages.  The motion does not challenge Ms. Greenlaw's

3

fourth claim, which seeks relief under the Freedom of Information Act, 5 U.S.C. §522 *et seq.*, and the Privacy Act, 5 U.S.C. § 522a, *et seq. Id.* at 2-3, 10.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject matter of a plaintiff's complaint. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint and is not required to presume the truthfulness of the plaintiff's allegations. *Id*. The party asserting federal subject matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B. Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness*

4

*Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

### C. Requests for Judicial Notice

A court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court properly may take judicial notice of matters of public record, but cannot take judicial notice of disputed facts contained within such records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). At any stage in the proceedings, a court may take judicial notice on its own and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

## III. DISCUSSION

### A. Failure to Exhaust or Complete Administrative Remedies

The Secretary argues that the Court lacks jurisdiction over any claims Ms. Greenlaw has chosen to pursue before the MSPB on the ground that those claims remain pending before that body. As the Secretary observes, both Title VII of the Civil Rights Act of 1976 and the Rehabilitation Act require a claimant to exhaust her administrative remedies before seeking relief in federal district court. *See* Dkt. No. 22 at 5-7; *Sommatino v. United States*, 255 F.3d 704, 707-08

(9th Cir. 2001) (Title VII); *Vinieratos v. U.S. Dep't of Air Force*, 939 F.2d 762, 773 (9th Cir. 1991) (Rehabilitation Act).

Conversely, the Age Discrimination in Employment Act does not require exhaustion of administrative remedies. *Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003). However, a claimant may pursue administrative remedies for an ADEA violation, either through the agency's EEO procedures or through the MSPB. *Id.* With respect to the ADEA claim, the Secretary contends that once a claimant elects to pursue an administrative remedy in the MSPB, she must see that administrative action through to final decision prior to filing a complaint in federal court. *See* Dkt. No. 22 at 5-7.

Ms. Greenlaw does not dispute the authority on which the Secretary relies. Rather, she argues that she is effectively unable to exhaust her remedies before the MSPB because that body has lacked a quorum for over two years and is unable to issue decisions. Dkt. No 26 at 3. The MSPB's website includes the following information regarding the status of the Board's membership and its impact on the Board's ability to act on pending matters:

> **How are the 3 Board members appointed?**
>
> . . . The Board currently has no sitting members. Prior to March 1, 2019, the Board operated for over two years without a quorum.
>
> . . .
>
> **What is the impact of a lack of quorum and Board members on MSPB operations**
>
> **. . .** As to the adjudicatory authorities of the Board, because there are no Board members, the Board is unable to issue final decisions on petitions for review. *See generally* 5 U.S.C. § 1204(a); 5 C.F.R. § 1200.3.
>
> . . .
>
> **Can the Board issue decisions on petitions for review without a quorum or Board members?**
>
> Petitions for review received before January 7, 2017, and for which the voting process was not completed before the Board lost a quorum, cannot be issued until a quorum is restored. Petitions for review received after January 7, 2017, have been acknowledged by the Office of the Clerk of the Board and processed according to current Board procedures. However, the Board cannot issue decisions on these petitions until a quorum is restored. . . .

**When does the Board anticipate having a quorum restored?**

> While it is not possible to determine exactly when the quorum will be restored, two nominations (to serve as Chairman and Member of the Board) are pending before the Senate. As explained in #1 above, after the President nominates Board members, they must be confirmed by the Senate before they can be sworn in as Board members.

*See* https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_March_1_2019.pdf. Ms. Greenlaw argues that because the Board lacks a quorum permitting it to act on her appeal, exhaustion of remedies before the MSPB would be futile. Dkt. No. 26 at 3.[3]

In reply, the Secretary acknowledges the dilemma Ms. Greenlaw faces, but suggests that her "impatience" with the MSPB's inaction does not mean that proceeding before the MSPB is futile. In fact, the Secretary argues that the futility doctrine does not apply to Ms. Greenlaw's federal statutory discrimination claims, and that she may be relieved of the exhaustion requirement only by an act of Congress. Dkt. No. 27 at 3.

The Secretary is correct that Title VII and the Rehabilitation Act require exhaustion of administrative remedies before an action may be filed in federal court. Ms. Greenlaw has not exhausted her administrative remedies because her MSPB appeal remains pending. While Ms. Greenlaw may seek judicial review of the *EEOC's dismissal* of her complaint for lack of jurisdiction based on the pendency of her MSPB appeal, her complaint in this action does not seek such review.

With respect to Ms. Greenlaw's ADEA claim, the Secretary's arguments are at odds with *Bankston* in which the Ninth Circuit declined to require a claimant to exhaust an administrative review process once such process had been selected, concluding instead that this judicially-created form of exhaustion reflects prudential concerns only. Those concerns may be mitigated or eliminated in view of the specific circumstances of the case, and particularly where no administrative proceedings are pending at the time a claimant files a federal lawsuit. *Bankston*, 345 F.3d at 772-777 (reversing dismissal of ADEA claim where plaintiff had voluntarily dismissed MSPB proceeding). One important difference between Ms. Greenlaw's complaint and

---

[3] Ms. Greenlaw does not invoke the protections of 5 U.S.C. § 706(1), perhaps because the agency could not act without a quorum, even if compelled to do so by this Court.

the complaint at issue in *Bankston*, however, is that Ms. Greenlaw's administrative proceeding is pending concurrently with her federal court action. *Cf. id.* at 776-777 ("[T]here are no administrative proceedings going on at the same time as *this* lawsuit, so the rational for the exhaustion rule is similarly diminished in this case.").[4]

This brings the Court to consideration of Ms. Greenlaw's contention that her failure to complete proceedings before the MSPB before filing suit should be excused as futile and all of her claims permitted to proceed. Application of the futility doctrine in the context of agency adjudicatory action depends on whether the exhaustion requirement is mandated by statute or arises from the common law. The Supreme Court has declined to read in futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (citing *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992)); *Avocados Plus v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004) (discussing difference between non-jurisdictional prudential exhaustion and statutory exhaustion, which is a prerequisite for judicial action). Because Title VII and the Rehabilitation Act contain statutory provisions mandating exhaustion of administrative remedies, the futility doctrine does not apply to these claims. Even if it did, however, as explained below, the circumstances alleged by Ms. Greenlaw do not support application of the doctrine here.

As explained above, the ADEA does not have a statutory exhaustion requirement, and application of exhaustion principles to ADEA claims depends on prudential considerations of judicial efficiency. However, even where the futility doctrine is available, its application is narrow and generally limited to circumstances when an adverse agency action is certain. *See, e.g., Shawnee Trail v. Department of Agriculture*, 222 F.3d 383, 389 (7th Cir. 2000); *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995) (stating that the futility exception to the exhaustion requirement "is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail."). Ms. Greenlaw's argument in

---

[4] The Court is not aware of any statutory provision or regulation that cause an MSPB proceeding to terminate automatically upon filing of an action in federal court, and neither party has called any such provision or regulation to the Court's attention.

8

favor of a finding that pursuing her MSPB appeal would be futile because the Board is presently unable to function requires the Court to consider whether the current and presumably temporary (albeit protracted) lack of a quorum renders her MSPB appeal futile. Here, the failure of the President to appoint and the Senate to approve a sufficient number of Board members for the body to have the quorum necessary to act on Ms. Greenlaw's appeal is the basis for her claim of futility. She cites no authority for the application of the futility doctrine in this situation, and the Court is aware of no relevant precedent for its application.[5] In any event, the Court cannot conclude on the basis of Ms. Greenlaw's present allegations that the MSPB's denial of her appeal is certain, or that the MSPB will never act on her appeal.

During the hearing on this motion, the parties and the Court discussed the possibility of Ms. Greenlaw withdrawing her MSPB petition. The Court notes that MSPB website contains the following guidance:

> **5. Can the Board issue decisions on requests to withdraw petitions for review?**
>
> Yes. Pursuant to the May 11, 2018 Policy Regarding Clerk's Authority to Grant Requests to Withdraw Petitions for Review, and the Board's 2011 Manual on Organization Functions and Delegations of Authority, the Clerk of the Board may exercise its delegated adjudicatory authority to "grant a withdrawal of a petition for review when requested by a petitioner."

https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_March_1_2019.pdf. The Court also notes that the claimant in *Bankston* appears to have dismissed his MSPB proceeding before filing a lawsuit in federal court. *See Bankston*, 345 F.3d at 776. However, even if it is possible for Ms. Greenlaw to dismiss her pending MSPB appeal and proceed with her ADEA claim in federal

---

[5] There may be a point at which administrative delay amounts to a refusal to act, sufficient to justify excusing an exhaustion or deeming the administrative process complete. *Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.,* 489 U.S. 561, 590–91 (1989) (Scalia, J., concurring) (discussing FSLIC's delay in deciding "enormous volume of claims against insolvent thrifts"); *Envtl. Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1100 (D.C. Cir. 1970) (remanding to Secretary of Agriculture to act promptly on petition to suspend registration of DDT). Ms. Greenlaw's amended complaint contains no allegations that would support such a conclusion. Even considering the publicly available information posted by the MSPB to which Ms. Greenlaw refers in her opposition, the Court cannot conclude that the administrative proceedings pending before the MSPB amount to a refusal to act, in view of the Board's apparent *lack of authority to act* until the Board members are nominated and approved by the Senate.

court, it may not be possible for Ms. Greenlaw to satisfy the exhaustion requirements with respect to her Title VII and Rehabilitation Act claims if she dismisses her MSPB appeal before that agency issues a final decision. *See, e.g.*, *Vinieratos,* 939 F.2d at 772 (statutory exhaustion requirement bars federal claim under Title VII where claimant abandoned administrative remedy). The Court expresses no view on these matters.

For these reasons, the Court grants the Secretary's motion to dismiss Ms. Greenlaw's federal law claims for discrimination and retaliation. Ms. Greenlaw has not identified any basis on which she might amend these claims to state a cognizable claim for relief, and the Court has identified none. This dismissal is without prejudice to Ms. Greenlaw seeking judicial review following exhaustion of her administrative remedies or, if applicable, termination of the pending administrative review process.[6]

### B. State Law Claims

The Secretary argues persuasively that Ms. Greenlaw's state law claims must be dismissed because Title VII, the Rehabilitation Act, and the ADEA provide the exclusive judicial remedies for claims of discrimination in federal employment. *See* Dkt. No. 22 at 9. Ms. Greenlaw has not offered any argument or authority to the contrary. *See* Dkt. No. 26. Accordingly, the Court dismisses the state law claims without leave to amend.

### C. Punitive Damages

The Secretary argues persuasively that punitive damages are not available as a remedy against the United States for violations of Title VII, the Rehabilitation Act, or the ADEA. *See* Dkt. No. 22 at 10. The Secretary moves to strike the portions of the first amended complaint that seek such relief. *Id.* Ms. Greenlaw has not offered any argument or authority in opposition. *See* Dkt. No. 26. Accordingly, the Court strikes Ms. Greenlaw's request for punitive damages for violations of the federal discrimination laws without leave to amend.

---

[6] For the reasons discussed above, however, Ms. Greenlaw has provided the Court with no basis to conclude that simply terminating the pending administrative proceedings will permit her to proceed with her claims in this Court.

## IV. CONCLUSION

The Court dismisses Ms. Greenlaw's federal age and disability discrimination claims, her state law claims, and her request for punitive damages, without leave to amend.

**IT IS SO ORDERED.**

Dated: May 17, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge