UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROSEMARY GREENLAW,<br><br>    Plaintiff,<br><br>    v.<br><br>EUGENE SCALIA, Secretary of Labor,<br><br>    Defendant. | Case No. 18-cv-04932-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 60 |

Plaintiff Rosemary Greenlaw filed this action against the Secretary of the U.S. Department of Labor ("Secretary"),[1] asserting claims for discrimination on the basis of age and disability and retaliation for engaging in protected conduct, as well as a claim for violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a.[2]  Dkt. No. 8. This matter presently is before the Court on the Secretary's motion for summary judgment[3] as to the sole remaining claim under FOIA and the Privacy Act. The Court deemed the matter suitable for determination without oral argument. Dkt. No. 69. Upon consideration of the moving and

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Eugene Scalia, the current Secretary of the U.S. Department of Labor, is substituted for his predecessor as defendant.

[2] Ms. Greenlaw is proceeding *pro se*.

[3] The scheduling order permitted both sides to move for summary judgment. Dkt. No. 59. Due to an oversight, the Secretary did not timely serve his summary judgment motion on Ms. Greenlaw, and the Court subsequently granted Ms. Greenlaw's request to extend the briefing schedule. Dkt. Nos. 62, 64, 65. Ms. Greenlaw has filed an opposition to the Secretary's motion, and it is not apparent that she intended for that document to also serve as an affirmative motion for summary judgment.

responding papers, the Court grants the Secretary's motion for summary judgment.[4]

**I.   BACKGROUND**

Unless otherwise noted, the material facts underlying this matter are undisputed.

Ms. Greenlaw worked as an Administrative Assistant for the Occupational Safety and Health Administration ("OSHA") beginning in April 2016.  According to her complaint, she subsequently applied for an Investigator position, but was not chosen due to discrimination on the basis of age and disability.  Additionally, Ms. Greenlaw alleges that her employment was terminated in October 2016 after she addressed a claimed discrepancy in her pay grade/compensation and work duties.  Dkt. No. 8.[5]  As noted above, the Court dismissed all of Ms. Greenlaw's claims, except for the one alleging violation of FOIA and the Privacy Act.  Ms. Greenlaw claims that the Secretary wrongfully refused or failed to produce requested documents and that she has been "harmed . . . in her actions to obtain the remedies she sought through various administrative processes for her wrongful termination by Defendant(s)."  *Id*. ¶ 48.

**A.   FOIA Request No. 819587**

On December 1, 2016, Ms. Greenlaw submitted a request to "foiarequests@dol.gov," an email address the Secretary says is designated for requests for information under FOIA.  Dkt. Nos. 60-1 ¶¶ 5, 7; 60-2 ¶¶ 5, 7.  The email states that Ms. Greenlaw's request "is not a 'freedom of information' request, but possibly falls under the Privacy Act and should not be disclosed to outside parties."  Dkt. No. 60-1 ¶ 7, Ex. A; Dkt. No. 60-2 ¶ 7, Ex. A.  Ms. Greenlaw asked for "copies from my computer of the items in the folders labelled HR (which includes my leave and earning statements, etc.)," as well as "Training (certificates and relevant documentation of training I completed)."  The request further stated that "[s]imilar folders are in Outlook (i.e. HR and

---

[4] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 21.

[5] Ms. Greenlaw pursued her employment issues with the Merit Systems Protection Board ("MSPB"), as well as through an Equal Employment Opportunity ("EEO") process.  The MSPB and EEO proceedings are addressed in further detail in other orders (Dkt. Nos. 37, 50) and will not be repeated here, as they are not germane to the issues raised in the present motion for summary judgment.

1  Training) and include the specific email referenced in my voice message to Loren Delicana [Ms.
2  Greenlaw's supervisor at OSHA], as it was the email(s) I sent her on/about/near October 25,
3  2016." Dkt No. 60-1 ¶ 7, Ex. A; Dkt. No. 60-2 ¶ 7, Ex. A.

4  Ms. Greenlaw's request was forwarded from the FOIA portal to Lori Jan, the FOIA
5  coordinator at the Office of the Assistant Secretary for Administration and Management
6  ("OASAM"), an agency of the Department of Labor. Dkt. No. 60-1 ¶ 8. Because Ms. Greenlaw's
7  December 1, 2016 request was also addressed to the email of Lois Henry, an OSHA employee,
8  and based on communications Ms. Jan subsequently had with OSHA, the Secretary says that Ms.
9  Jan mistakenly believed that OSHA was also simultaneously processing Ms. Greenlaw's request.
10 *Id*. ¶¶ 8, 10, Ex. B.

11 On January 3, 2017, Ms. Greenlaw sent an email to OASAM personnel, requesting her
12 Standard Form 50s ("SF-50s")[6] and her leave and earning statements from October to December
13 2016. Dkt. No. 60-1 ¶ 11, Ex. C. Ms. Jan believed that this January 3 request was related to and
14 part of Ms. Greenlaw's December 1, 2016 FOIA request. *Id*. OASAM says that it provided Ms.
15 Greenlaw with responsive SF-50s and earning and leave statements on January 5, 2017 and
16 advised that her FOIA request 819587 was closed. *Id*. ¶ 12, Ex. C.

17 **B.   FOIA Request No. 822457**
18 On January 9, 2017, Ms. Greenlaw sent an email to the FOIA portal,
19 foiarequests@dol.gov, disputing that the documents she previously requested had been produced.
20 She further noted that the documents she requested on December 1, 2016 are contained on her
21 work computer at the OSHA office where she had been employed. Dkt. No. 60-1 ¶ 11, Ex. C.
22 When received, this January 9 email was catalogued as a new FOIA request and assigned number
23 822457. *Id*. ¶ 13. In response, OASAM says that on February 10, 2017, it provided Ms. Greenlaw
24 with additional leave and earning statements and Certificates of Completion from the Department
25 of Labor's training website. *Id*. ¶ 14, Ex. D. However, OASAM told Ms. Greenlaw that it did not
26 have access to her work computer at OSHA. *Id*.

---

[6] An SF-50 is an administrative form used to record changes to an employee's personnel file.

1   After Ms. Greenlaw appealed to the Department of Labor's Office of the Solicitor, the
2   matter was remanded to OASAM, with instructions that OASAM was obliged to send Ms.
3   Greenlaw's requests to OSHA. Dkt. No. 60-1 ¶ 15, Ex. E. The affiant for OASAM avers that this
4   was when OASAM first realized that OSHA had not properly received Ms. Greenlaw's request.
5   *Id.* ¶ 15.

### C.     FOIA Request No. 829400/870977

Upon remand, the Secretary says that Ms. Greenlaw's request was processed by OSHA, which assigned the request number 829400 and processed approximately 940 pages of responsive documents from Ms. Greenlaw's computer. Dkt. No. 60-1 ¶ 16; Dkt. No. 60-2 ¶¶ 10, 13. OSHA produced approximately 690 pages of responsive documents to Ms. Greenlaw, with some redactions, on November 30, 2018. Dkt. No. 60-2 ¶¶ 14-17. By this time, Ms. Greenlaw had filed the present lawsuit. At Ms. Greenlaw's request during discussions with the government's counsel, OSHA provided additional documents to Ms. Greenlaw on February 26, 2019. These additional pages, which had previously been produced on November 30, 2018 in black-and-white format, were now printed in color and showed the original yellow highlights on the documents. Dkt. No. 60-2 ¶ 18.

In addition to the 690 pages of documents provided to Ms. Greenlaw, OSHA's November 30, 2018 production included 251 pages of potentially responsive documents, which OSHA sent to Ms. Greenlaw with the contents redacted entirely. OSHA says it did so because these were OASAM documents that needed to be reviewed and processed by OASAM. Dkt. No. 60-1 ¶ 16; Dkt. No. 60-2 ¶ 13. OSHA referred those 251 pages to OASAM for review on November 30, 2018. Dkt. No. 60-1 ¶ 16; Dkt. No. 60-2 ¶ 13. With respect to those 251 pages, OASAM assigned the request number 870977 and produced all of those pages to Ms. Greenlaw on a disc, without any redactions, on December 11, 2018. Dkt. No. 60-1 ¶ 18, Ex. F. After Ms. Greenlaw stated that she had difficulty accessing the documents, OASAM sent the documents to her again on January 18, 2019. *Id.* ¶ 18.

The remaining issues in this case concern redactions OSHA made in the documents it

produced to Ms. Greenlaw. One category of redactions, made pursuant to 5 U.S.C. § 552(b)(2)[7] (i.e., position descriptions), has been resolved. OSHA agreed to produce the position descriptions to Ms. Greenlaw, and says it did so through government counsel on September 26, 2019. Dkt. No. 67-1 ¶ 4, Ex. C; *see also* Dkt. No. 60-1 ¶ 20; Dkt. No. 60-2 ¶ 14. Ms. Greenlaw does not present any argument or evidence to the contrary.

As for the other redactions made by OSHA, the Secretary says that they appear on approximately 73 pages of OSHA's production and consist of the personally identifiable information (i.e., names and contact information, biographical information, and in some instances signatures) of federal employees, union representatives, federal contractors and private citizens, including whistleblower complainants whose allegations were investigated by OSHA. Dkt. No. 60-2 ¶¶ 15-17. The Secretary contends that this information properly was redacted pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6), and Exemption 7(C), 5 U.S.C. §552(b)(7)(C). Ms. Greenlaw opposes the Secretary's motion for summary judgment solely on the ground that the Secretary has not produced information on pages that she says were "entirely blacked out" and not included on the Secretary's *Vaughn*[8] index. Dkt. No. 66. For the reasons discussed below, the Court will enter summary judgment for the Secretary.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential

---

[7] FOIA protects disclosure of information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).

[8] *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In resolving the present motion, the Court has considered the Secretary's *Vaughn* index, which the Secretary previously submitted to the Court in connection with a court-ordered joint status report. Dkt. No. 58.

1    element of the nonmoving party's claim or defense or show that the nonmoving party does not
2    have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
3    *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).
4         If the moving party meets its initial burden, the burden shifts to the non-moving party to
5    produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210
6    F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse
7    party's evidence, but instead must produce admissible evidence that shows there is a genuine issue
8    of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved
9    in favor of either party. A dispute is "material" only if it could affect the outcome of the suit
10   under the governing law. *Anderson*, 477 U.S. at 248-49.
11        "It is generally recognized that summary judgment is a proper avenue for resolving a FOIA
12   claim." *Sakamoto v. U.S. Envtl. Prot. Agency*, 443 F.Supp.2d 1182, 1188 (N.D. Cal. 2006) (citing
13   *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir.1988)); *see also Animal Defense
14   Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) ("Most FOIA cases are
15   resolved by the district court on summary judgment, with the district court entering judgment as a
16   matter of law."). To carry their burden at summary judgment, agencies typically must submit a
17   *Vaughn* index and detailed public affidavits that together identify the documents withheld, the
18   FOIA exemptions claimed, and a particularized explanation of why each document falls within the
19   claimed exemption. *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012),
20   overruled on other grounds by *Animal Defense Fund*, 836 F.3d at 989-90. These submissions
21   must be from affiants who are knowledgeable about the information sought, and must also be
22   detailed enough to allow the Court to make an independent assessment of the government's claim
23   of exemption from disclosure. *Id*.

**III. DISCUSSION**

    **A.     FOIA**[9]

26   FOIA "was enacted to facilitate public access to Government documents" and "to pierce

---

[9] Ms. Greenlaw seems to argue that the requests at issue are not FOIA requests and that FOIA exemptions and standards should not be applied. Dkt. No. 66 at 1. As noted above, her email

United States District Court
Northern District of California

the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotations and citation omitted). The statute thus "requires federal agencies to disclose records that are requested by a member of the public." *Cameransi v. U.S. Dep't of Defense*, 856 F.23d 626, 637 (9th Cir. 2017); 5 U.S.C. § 552(a)(3)(A). "FOIA's disclosure obligations extend to all agency records except the nine categories of records listed in § 552(b) as exempt from disclosure." *Id*.

With respect to the names and contact information, biographical information and signatures of federal employees, union representatives, federal contractors and private citizens (including whistleblower complainants), the Secretary maintains that all of these redactions are permitted under FOIA Exemption 6,[10] and that redactions of identifying information concerning whistleblower complaints are additionally allowed by Exemption 7(C).[11] It is not entirely clear from the Secretary's papers what particular privacy interest is at stake,[12] except to the extent that the OSHA affiant suggests that redaction is necessary to protect whistleblowers against possible retaliation for reporting workplace health and safety violations. Dkt. No. 60-2 ¶ 17. Nevertheless, Ms. Greenlaw does not appear to contest the propriety of these particular redactions. Rather, the sole basis of her opposition appears to be that the Secretary produced documents that were given to her in "entirely blacked out" form and which she says were not included on the Secretary's *Vaughn* index. Specifically, Ms. Greenlaw refers here to the following pages of the Secretary's

---

requests for information indicated that they were not FOIA requests, but were nonetheless sent to the Department of Labor's FOIA portal. Dkt. No. 60-1 ¶ 7, Ex. A; Dkt. No. 60-2 ¶ 7, Ex. A. The fact remains that Ms. Greenlaw filed this action asserting a claim for violation of FOIA and the Privacy Act, which is her sole remaining claim for relief.

[10] Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[11] Exemption 7(C) excludes from FOIA's disclosure requirement "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

[12] Moreover, the Court questions whether names and contact information are categorically protected from disclosure, as the Secretary seems to suggest. *See Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1085-86 (N.D. Cal. 2015).

production: 411-420, 431-440, 483-486, 491-492, 503, 509-522, 530-538, 557-559, 575-578, 581, 584, 598-601 and 751-754. Dkt. No. 66 at 2 (referring to redactions on these documents and their omission from the *Vaughn* index as "the outstanding issue").

The Secretary's counsel avers that all of these pages have been produced to Ms. Greenlaw in unredacted form. Dkt. No. 67-1. In particular, the Secretary notes that these pages include those that were produced without redactions by OSHA on November 30, 2018;[13] documents produced without redactions by OASAM in December 2018 and resent on January 18, 2019;[14] and documents which OSHA produced with unredacted position descriptions on September 26, 2019.[15] Dkt. No. 67-1, Exs. A & B; *see also* Dkt. No. 60-1 ¶ 18; Dkt. No. 60-2 ¶ 13. Ms. Greenlaw having presented no evidence to the contrary, the Court finds that the Secretary is entitled to summary judgment on her claim for alleged violation of FOIA.

### B.     Privacy Act

Ms. Greenlaw nonetheless argues that she is entitled to the requested documents under the Privacy Act, stating that she was "denied access to her personal records, maintained by her former employer [OSHA], which deprived her of having a fair hearing on her discrimination claims against OSHA." Dkt. No. 66 at 2. The particular documents at issue are the same as those discussed above (*id.*), and which the Secretary has demonstrated were produced to Ms. Greenlaw in unredacted form.

In general, the Privacy Act's purpose is to protect an individual's privacy through the regulation of the collection, maintenance, use and dissemination of information by federal agencies. *Polk v. Fed. Bureau of Investigation*, No. 14-cv-4667-PJH, 2016 WL 80564, at *1 (N.D. Cal. Jan. 7, 2016) (citing *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 413 (9th Cir. 2009)).

---

[13] Documents 485, 512, 514, 522, 534-535.

[14] Documents 411-420, 431-440, 483-484, 486, 491-492, 503, 509-511, 513, 515-522, 530-533, 536-538, 557-559, 575-578, 581 and 584. Documents 491-92 do appear on the Secretary's *Vaughn* index, with a note indicating that employee names and contact information were redacted pursuant to FOIA Exemption 6. Dkt. No. 58 at ECF 40. However, the Secretary's summary judgment papers demonstrate that these pages have been produced to Ms. Greenlaw without any redaction. Dkt. No. 67-1, Exs. A, B.

[15] Documents 598-601 and 751-754.

1    The Privacy Act requires each federal agency that "maintains a system of records" to allow an
2    individual to access her record or any information pertaining to her "which is contained in the
3    system," and to provide a copy of the record to the individual at her request.  5 U.S.C.
4    § 522a(d)(1).  An individual who makes a proper request for records and is denied access to them
5    may bring a civil action against the agency in federal court.  *Id*. § 552a(g)(1)(B).
6        The Secretary argues, persuasively, that the Privacy Act does not apply because Ms.
7    Greenlaw did not request documents from a "system of records" within the meaning of the statute.
8    *See Baker v. Dep't of the Navy*, 814 F.2d 1381, 1383 (9th Cir. 1987) (observing that under
9    guidelines promulgated by the Office of Management and Budget, "the access provision of the
10   Privacy Act, 5 U.S.C. § 552a(d)(1), applies only to records contained in a 'system of records' as
11   defined in § 552a(a)(5).").  The Privacy Act defines a "system of records" as "a group of any
12   records under the control of any agency from which information is retrieved by the name of the
13   individual or by some identifying number, symbol, or other identifying particular assigned to the
14   individual."  5 U.S.C. § 552a(a)(5).  In this case, Ms. Greenlaw requested documents from folders
15   she created on her work computer.  *See* Dkt. No. 60-1 ¶ 11, Ex. C.  Citing to the Department of
16   Labor's "Privacy Act Systems," https://dol.gov/sol/privacy, the Secretary states that employee
17   work computers are not among the system of records maintained by the Department's agencies,
18   including OSHA.  Dkt. No. 67 at 2.  Moreover, courts have noted that "[i]t is not sufficient that a
19   federal agency has the capability to retrieve information indexed under a person's name, but the
20   agency must in fact retrieve records in this way for a system of records to exist."  *Smith v.*
21   *Henderson*, No. C-96-4665-PJH, 1999 WL 1029862, at *5 (N.D. Cal. Oct. 29, 1992) (citing *Henke*
22   *v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1461 n. 12 (D.C. Cir.1996)).  The Secretary has
23   demonstrated that the folders Ms. Greenlaw created on her work computer are not a "system of
24   records" under the Privacy Act because the Secretary did not use those folders to systematically
25   file and retrieve information about individuals indexed by their names, number or some other
26   identifying symbol.  *Id.* (concluding that an employee's personal drawer and file folder was not a
27   "system of records" because defendant did not use the drawer to systematically file and retrieve
28   information about individuals indexed by their names).  Ms. Greenlaw having failed to present any

evidence creating a genuine issue of material fact as to whether the disclosed documents are a part of a "system of records," summary judgment for the Secretary is warranted.

### IV. CONCLUSION

Based on the foregoing, the Secretary's motion for summary judgment is granted. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: July 15, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge